BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

LATHROP LAW, APC
JORGE FEDERICO LATHROP (330976)
205 West Alvarado Street
Fallbrook, CA 92028
Tel: 760/723-9612
760/723-9681 (fax)
federico@lathroplawfirm.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMONDO PORCU, Individually and on Behalf of All Others Similarly Situated, | Case No. '23CV2302 LL    BGS |
| Plaintiff, | **CLASS ACTION** |
| v. | **CLASS ACTION COMPLAINT** |
| GEICO GENERAL INSURANCE COMPANY, | |
| Defendant. | **JURY TRIAL DEMANDED** |

00207370

BLOOD HURST & O' REARDON, LLP

Plaintiff Edmondo Porcu ("Plaintiff") brings this class action complaint against Defendant Geico General Insurance Company ("Geico" or "Defendant"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a class action arising out of Geico's deceptive and unfair practice of failing to pay its insureds the amount owed after it declares its insureds' leased vehicles a total loss.

2. Under Geico's standard vehicle insurance contract, Geico pays out the Actual Cash Value ("ACV") of an insured vehicle if it is deemed a total loss after a collision. Historically, with leased vehicles, the ACV was less than the amount owed on the vehicle by a lessee under the lease agreement. That is because the value of a new leased vehicle greatly declined the minute it was driven off the car lot.

3. However, in recent years, the automotive industry has experienced a trend: used car prices have not only remained stable, but in some cases, steadily risen. As used car prices have risen, the residual value of leased vehicles – the estimated value of the car at the end of the lease term – has also increased. In many cases, this has resulted in a leased vehicle's value being higher than the amount owed under the lease at the time of a total loss collision. That means that when a total loss accident or collision occurs, not only is the remaining lease balance amount covered by insurance, but a surplus amount remains. The surplus is related to the increased cost to the insured to obtain a replacement vehicle given the rise in used vehicle prices. Consequently, when the insurance payout is more than what insureds owe to their leasing companies, the resulting surplus should rightfully and contractually be paid to the insureds as owners and payees of the insurance policy. That way the insureds can pay off what remains under the leasing agreement and use the remaining money to

obtain a replacement vehicle. This is how it is supposed to work under Geico's standardized insurance policy.

4.      However, in breach of its insurance policy and in violation of the laws alleged herein, including Geico's duty of good faith and fair dealing, Geico does not pay the equity surplus amount to its insureds. Instead, Geico unlawfully pays this amount to the insureds' leasing companies even though the leasing companies have no right to the surplus under the insurance contract, or otherwise.

5.      In exchange for premiums paid by Plaintiff and its thousands of other insureds, Geico provided standardized auto insurance coverage, promising to pay them the ACV of their insured vehicles minus the applicable deductible in the event of a total loss. Plaintiff and other Class Members each experienced total loss events involving their leased, insured vehicles. Geico accepted coverage, declared the covered vehicles to be total losses, and calculated the ACV and applicable deductibles for the vehicles. Based on Geico's calculations, the amount Geico owed Plaintiff and other Class Members exceeded the amount of money they owed their auto lenders. Geico knew or should have known this fact, including because it: (1) requires copies of the lease agreement during the application process to underwrite and assess the risks associated with the leased vehicle; (2) receives the outstanding lease balance from the leasing company when handling a total loss claim involving a leased vehicle; and (3) is aware of the increase in the ACV of vehicles. However, Geico did not pay the equity surplus to Plaintiff and other Class Members. Instead, in breach of its policy and in violation of the laws alleged herein, Geico sent the entire loss payout amounts it owed under the insureds' policies to third-party lenders. To date, Geico refuses to pay Plaintiff and other Class Members as required under their insurance policies.

6.      As a result, Plaintiff now brings this action individually and on behalf of all similarly situated insured persons and entities against Geico for its failure to honor its duties and obligations under its insurance policies. Plaintiff and the Class allege claims for breach of contract, violations of California's Unfair Competition Law,

BLOOD HURST & O' REARDON, LLP

00207370

breach of the implied covenant of good faith and fair dealing, and for declaratory relief. Plaintiff and other Class Members are entitled to damages and restitution arising from Geico's failure to pay them any portion of the loss payout, and also request declaratory and injunctive relief regarding the parties' contractual obligations.

## JURISDICTION AND VENUE

7.     The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, and some of the members of the class are citizens of states different from Defendant.

8.     This Court has personal jurisdiction over Defendant because Defendant conducts business in California. Defendant has marketed, promoted, distributed, and sold the insurance policy at issue in California, rendering exercise of jurisdiction by California courts permissible.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district. Venue also is proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this district.

## PARTIES

### *Plaintiff*

10.     Plaintiff Edmondo Porcu is a citizen of the State of California, and, at all times relevant to this action, resided in San Diego, California. Plaintiff purchased an automobile insurance policy from Geico that provides coverage for, *inter alia*, physical damage including comprehensive loss and collision loss, to a 2022 Mini Countryman that he leased through BMW Financial Services. The policy was effective at the time he leased the vehicle in December 2022 and was most recently renewed for that vehicle for a policy period of January 26, 2023 through July 26,

BLOOD HURST & O' REARDON, LLP

00207370

2023. Plaintiff timely and in full paid the premiums associated with his insurance policy at issue.

11.    On February 8, 2023, which was during the policy period, Plaintiff's insured Mini Countryman was involved in a traffic accident in San Diego, California. Geico accepted coverage for this event, declared the vehicle to be a total loss in accordance with the terms of the insurance policy, and determined that it owed $37,099.22 – the market value of the car – under Plaintiff's policy. At the time of the collision and total loss event, Plaintiff owed $31,106.82 to BMW Financial Services under the vehicle lease. Accordingly, after subtracting the amount Plaintiff owed under his lease from the amount Geico owed under the policy, an equity surplus of $5,992.50 remained. However, Geico paid to BMW Financial Services both the lease balance owed by Plaintiff and the equity surplus that was owed to Plaintiff for a total of $37,099.22. Geico refused to pay to Plaintiff any portion of the amount due under his insurance policy. Geico's conduct is in violation of the laws alleged herein and Plaintiff has suffered injury in fact and has lost money as a result of Geico's conduct.

### *Defendant Geico General Insurance Company*

12.    Geico General Insurance Company[1] is a Maryland corporation with its principal place of business in Chevy Chase, Maryland. Geico advertises, markets, distributes, sells and/or issues auto insurance to consumers in California and throughout the United States, including Plaintiff.

### **FACTUAL ALLEGATIONS**

**I.    Leased Vehicles and Auto Insurance**

13.    In recent years, due to an increase in inflation and issues in the manufacturing and delivery of new vehicles, there has been a notable surge in demand

---

[1]    Geico General Insurance Company also includes its affiliates Geico Indemnity Company and Geico Casualty Company.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

for used vehicles. This surge, in turn, has led to a rise in the market value of used vehicles.

14.    Given this inflationary phenomenon, the actual market value of leased vehicles is now often higher than the residual value of a leased vehicle – the estimated value of the car upon termination of the vehicle lease agreement.

15.    When a leased vehicle is involved in an accident and is declared a total loss by the insurance company, the market value assessed by the insurance company is often higher than the remaining balance of the lease.

16.    The lessees, here Plaintiff and other Class Members, were required to and did purchase and maintain insurance on their leased vehicles as part of their lease agreements. Leasing companies require insurance so that any insurance payment will be applied towards what remains on a lease at the time of payout. As a result, their right to any insurance payout is limited to their rights under the leasing agreement. To the extent the lease has been paid off when the vehicle is deemed a total loss, the leasing company has no right to any insurance payout.

17.    This is similar to financed purchased vehicles where the financing company requires a financed vehicle be insured while money is still owed on the vehicle. This ensures that any insurance payout can be applied towards what is owed under the purchase financing agreement. To the extent no money is owed under the financing agreement at the time the vehicle is deemed a total loss, the financing company has no right to any insurance payout.

18.    Therefore, just as with purchased vehicles, lessees, as the insureds paying for insurance, are entitled to the difference between the insurance payout and the outstanding balance of the lease.

19.    Geico's policy and practice with leased vehicles is contrary to that of its competitors in the auto insurance industry. Unlike Geico, when the auto insurance loss payout is more than what the named insured owes to the leasing company, Geico's competitors pay the equity surplus directly to the named insured.

Blood Hurst & O' Reardon, LLP

5
CLASS ACTION COMPLAINT

## II.    The Geico Insurance Policy

20.    Geico sold Plaintiff and the Class Members standardized automobile insurance policies (the "Policy"). *See* **Exhibit A** (Geico Policy).

21.    Plaintiff and the Class Members paid premiums to Geico in exchange for the coverages and benefits of the Policy.

22.    Pursuant to the "AGREEMENT" section of the Policy, Geico agreed that, "Relying on the information *you* have furnished and the declarations attached to this policy and if *you* pay *your* premium when due," Geico will provide certain coverages. Exhibit A at page 26.

23.    At issue in this case is Geico's payment for collision loss owed under the Policy.

24.    In "Section III – Physical Damage Coverages" of the Policy, Geico agreed to pay for "***Collision***" Coverage:

> We will pay for ***collision loss*** to the ***owned auto*** or ***non-owned auto*** for the amount of each ***loss*** less the applicable deductible.

*See* Exhibit A at page 31. "Owned auto" includes the leased vehicle insured under the Policy.

25.    Geico's "LIMIT OF LIABILITY" for loss under Section III is the actual cash value ("ACV") of the vehicle determined at the time of the loss. *See* Exhibit A at page 32.

26.    As Geico explains in the Declarations of the Policy and the "Coverage Descriptions," Geico agreed to provide "collision" coverage "for loss or damage to your vehicle, less any applicable deductible, caused by collision with another object or by upset. In the event of total loss, the most we will pay is the actual cash value of the vehicle, subject to the applicable deductible." *See* Exhibit A at pages 7, 11.

27.    As defined by Geico in the Policy, ACV means "the replacement cost of the auto or property less ***depreciation*** or ***betterment.*** … ***Betterment*** is improvement of the auto or property to a value greater than its pre-loss condition. … ***Depreciation***

Blood Hurst & O' Reardon, LLP

means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes."[2] *See* Exhibit A at page 30.

28.    Basing the total loss payout on the ACV serves several purposes. Principal among these purposes is fair compensation. That is, the aim of ACV is to provide a payment that reflects the prevailing value of the vehicle at the time of the loss. This allows the insured party who is making the premium payment to pay off any lien owed on the vehicle and potentially purchase a replacement vehicle that is similar to what they had before the accident.

29.    Geico defines a "lien" as "[a] claim, charge, or encumbrance on property as a security for payment of a debt."[3] Geico defines a lienholder as "[a] person or organization with a financial interest in property up to the amount of money borrowed or still owed on the property."[4]

30.    When a vehicle is financed or leased, the lien is the amount owed under the finance or lease agreement, and the lienholder is the finance company. The lienholder's financial interest in the vehicle is up to the amount of money still owed under the finance or lease agreement.

31.    As a result, money paid out under the insurance policy for damage or loss to the vehicle is reasonably expected to go towards to lienholder up to the amount of the lien.

32.    For this reason, insurance policies, including the Policy at issue here, identify the lienholder. *See* Exhibit A at page 7 (identifying "BMW Financial SVCS NA LLC" as the "Finance Company/Lienholder"). This makes clear to Geico that a lien exists on the vehicle and if money is paid out, the lienholder should receive

---

[2]    Bolded and italicized words or phrases quoted from the Policy that appear in this Complaint are also bolded and italicized in the Policy to indicate that they are defined words or phrases.

[3]    https://www.geico.com/information/insurance-terms/

[4]    *Id.*

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

payment up to its lien amount. However, the lienholder's rights under the Policy are limited to its lien.

33. Indeed, under the Loss Payable Clause of the Policy, Geico states, "We may settle a claim at our option by separate payment to the insured and the Lienholder." Exhibit A at page 23. Geico recognizes that if it pays the lienholder, Geico "shall be subrogated to the Lienholder's rights of recovery to the extent of the payment." *Id.* That is, Geico acknowledges that the lienholder's rights to recovery are limited to its lien.

34. However, Geico does not pay lease lienholders only their lien amounts. Instead, Geico pays lease lienholders the full ACV, knowing that in an environment of increased used car values, the ACV exceeds the lien amount (amount owed under the lease agreement). Geico also knows that the lease lienholders intend on keeping the full ACV, without any payment to Plaintiff and Class Members as the insureds who paid the Policy premiums.

35. By way of example, Plaintiff's lease agreement with BMW Financial Services contains standard lease terms commonly used by third-party leasing companies in lease agreements. *See* **Exhibit B** (BMW Lease Agreement) (the "Lease").[5] In the event of an early termination of the Lease, BMW Financial Services' interest in the loss payout amount was limited to what Plaintiff owed under the Lease.

36. The Lease's "Vehicle Loss or Damage" section permits BMW Financial Services to terminate the Lease early and calculate the amount it is owed under the "Gap Amount" Waiver section. Exhibit B at page 4. The Vehicle Loss or Damage section states:[6]

---

[5]     The use of the Lease as an example does not limit the pleadings in this Complaint to claims against only BMW Financial Services.

[6]     The Lease defines "I," "me," and "my" to refer to the Lessee – here, Plaintiff, and "you" and "your" to refer to the Lessor – here, BMW Financial Services. *See* Exhibit B at page 1 (section titled "Agreement to Lease").

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00207370

I agree to immediately notify you if the Vehicle is damaged or destroyed in an accident, stolen, abandoned, or taken by a police or other governmental agency. In that event, you reserve the right to terminate this Lease and my liability will ... be: (a) calculated under Section 25 below, if I am in compliance with my insurance obligations[.]

*See* Exhibit B at page 4, Section 24.

37.    Plaintiff was compliant with his insurance obligations under the Lease when Geico declared the leased vehicle a total loss, and BMW Financial Services exercised its right to terminate the Lease early under the Vehicle Loss or Damage section.

38.    As stated in the Lease, BMW Financial Services' interest in the leased vehicle was limited to the extent of Plaintiff's liability under the Gap Amount Waiver section. *See* Exhibit B at page 4, Section 24.

39.    The Gap Amount Waiver section defines a lessee's liability as:

If I am in compliance with my insurance obligations under this Lease and the Vehicle is damaged, stolen or destroyed and considered a total loss under my insurance coverage, I will not be obligated to pay you the gap amount (the *difference between* the Adjusted Lease Balance and the actual cash value of the Vehicle as of the date of loss) if the claim for total loss is actually paid to you by my insurance company.

*See* Exhibit B at page 4, Section 25 (emphasis added).

40.    Under the Gap Amount Waiver section, BMW Financial Services' interest in the leased vehicle is at most the Adjusted Lease Balance when the vehicle is considered a total loss. Exhibit B at page 4, Section 25.

41.    The "Purchase Option" section of the Lease similarly limits BMW Financial Services' interest to the Adjusted Lease Balance, providing that, prior to the end of the Lease, a lessee may purchase the vehicle and "the purchase price will be the Adjusted Lease Balance." Exhibit B at page 5 (section titled "ENDING MY LEASE").

42.    Under the "Early Termination of the Lease" section, lessees are also provided with the option to terminate the Lease without purchasing the leased vehicle.

Blood Hurst & O' Reardon, LLP

9

00207370

Exhibit B at page 5, Section 30. The lessee's liability to BMW Financial Services is calculated by one of two options. *Id.*

43.    Option A calculates a lessee's liability as the following:

I agree to pay the sum of: (1) all remaining Monthly Payments; plus (2) any past due Monthly Payments; plus (3) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease; plus (4) any Excess Wear and Use and Excess Mileage Charges; plus (5) a $350 Disposition Fee. However, should my Early Termination Liability calculated under this Option exceed what I would have owed had I selected Option B, you will waive the difference and my liability will be capped at Option B.

*See* Exhibit B at page 5, Section 30.

44.    Option B reflects the maximum interest rights that BMW Financial Services has in the leased vehicle at the early termination of the Lease, calculated as:

I agree to pay the sum of: (1) any past due Monthly Payments; plus (2) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease except Excess Wear and Use and Excess Mileage charges; plus (3) a $350 Disposition Fee; plus (4) the amount by which the Adjusted Lease Balance (explained below) exceeds the Realized Value of the Vehicle (<u>Section 31</u>).

*See* Exhibit B at page 5, Section 30.

45.    "Adjusted Lease Balance" is determined at:

[A]ny given time by subtracting the scheduled Base Monthly Payments earned through the early termination date from the Adjusted Capitalized Cost and adding to the difference the cumulative Rent Charge earned through the early termination date. The Rent Charge is calculated according to the "constant yield method". Under the constant yield method, each month's rent charge is earned in advance by multiplying the constant rate implicit in the Lease times the Adjusted Lease Balance. The Rent Charge calculations are based on the assumption that Lessor will receive the Monthly Payments on the exact due date.

*See* Exhibit B at page 5, Section 30.

46.    "Adjusted Capitalized Cost" is defined as the agreed upon value of the leased vehicle under the Lease less the "amount of any net trade-in allowance, rebate,

Blood Hurst & O' Reardon, LLP

10

00207370

noncash credit, or cash" paid by a lessee. Exhibit B at page 2, Section 10 (titled "MY MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW"). The Adjusted Capitalized Cost is the amount used in calculating a lessee's monthly payment and reflects the difference between the agreed-upon value of the leased vehicle and any money a lessee paid BMW Financial Services prior to entering into the Lease. *Id.* As stated in the Lease sections above, in the event of any early termination like the leased vehicle being declared a total loss, BMW Financial Services' monetary interest in the vehicle is limited to the Adjusted Lease Balance. *See* Exhibit B.

47.    The Lease does not contain any section entitling BMW Financial Services to an amount exceeding the Adjusted Lease Balance apart from various applicable fees and charges. *See* Exhibit B.

48.    Geico (as the insurer) has a duty to not take actions that frustrate Plaintiff's (the insured) rights to the benefits – in this case, the total loss payout – owed to Plaintiff under the Policy.

49.    Contrary to the plain terms of the Policy and in violation of the laws alleged, including Geico's duty of good faith and fair dealing, Geico refuses to pay the equity surplus portion of the loss payment amount to Plaintiff and other Class Members in violation of the laws alleged herein. Instead, Geico wrongfully diverts and has paid the full contractual loss payout amount to third-party lenders, regardless of the lenders' actual interest in the insurance payment, and not to its insureds, Plaintiff and other Class Members who were entitled to some or all of the total loss payout amount.

50.    Plaintiff seeks, on his own behalf and on behalf of all other similarly situated individuals, damages, restitution, and declaratory and injunctive relief to define the parties' rights and obligations and to stop Geico's ongoing misconduct.

## CLASS DEFINITION AND ALLEGATIONS

51.    Plaintiff, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), brings this action on behalf of the following classes (collectively, the "Class"):

All persons and entities with collision loss coverage for physical damage to their covered leased vehicle under an insurance policy issued by Geico General Insurance Company, who suffered a total loss of their vehicle, resulting in an equity surplus based on Geico's ACV payout calculation, and for which Geico General Insurance Company failed to pay them for any portion of the covered loss.

52.     Excluded from the Class is Defendant, its parents, subsidiaries, affiliates, officers, and directors, all persons who make a timely election to be excluded from the Class, the judge to whom this case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

53.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

54.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. There are, at a minimum, thousands of members of the proposed Class.

55.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

(a)     the interpretation and application of uniform insurance policy language under the same set of facts;

(b)     whether Plaintiff and other Class Members suffered a covered loss under the common policy issued to the Class;

(c)     whether Defendant was required to pay Plaintiff and other Class Members directly for the entire amount of the total loss;

(d)     whether Defendant was required to pay Plaintiff and other Class Members directly for the equity surplus amount of the total loss;

BLOOD HURST & O' REARDON, LLP

00207370

(e)    whether Defendant breached its contract of insurance by sending full payment for loss to the named insured's lending companies and not the named insured's themselves;

(f)    whether Defendant's conduct violates its duty of good faith and fair dealing;

(g)    whether Defendant's conduct constitutes violations of the laws asserted herein;

(h)    whether Defendant's conduct constitutes a violation of Cal. Bus. & Prof. Code § 17200, et seq.;

(i)    whether Defendant's conduct violates public policy;

(j)    whether Plaintiff and other Class Members have been injured and the proper measure of their losses as a result of those injuries;

(k)    whether Plaintiff and other Class Members are entitled to injunctive, declaratory, or other equitable relief; and

(l)    whether Plaintiff and other Class Members are entitled to an award of reasonable attorneys' fees, interest, and costs.

56.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class Members' claims because, among other things, all Class Members were comparably injured through the uniform prohibited conduct described above.

57.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class Members that Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class Members will be fairly and adequately protected by Plaintiff and his counsel.

BLOOD HURST & O' REARDON, LLP

00207370

58. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

59. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## **CLAIMS ALLEGED**

### **COUNT I**

### **Breach of Contract**

60. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

61. Plaintiff brings this claim individually and on behalf of the Class.

62. The Policy owned by Plaintiff and other Class Members is an insurance contract under which Defendant was paid premiums in exchange for its promises to pay Plaintiff's and other Class Members' losses for claims covered by the Policy in the amount and manner set forth in the Policy.

BLOOD HURST & O' REARDON, LLP

00207370

63.    The Policy between Plaintiff and other Class Members on the one hand, and Defendant on the other, includes the adhesionary collision coverage provisions discussed in this Complaint. *See* Exhibit A (Geico Policy).

64.    In the Policy, Defendant promised to pay for loss or damage to Plaintiff's and other Class Members' vehicles, less any applicable deductible, caused by collision with another object or by upset, up to the actual cash value of the vehicles. *See* Exhibit A at pages 11, 32.

65.    The Policy specified that Defendant would settle the claims for ***loss*** with the ***insured***, which it defined to be Plaintiff. Exhibit A at page 23. But in breach of the insurance agreement, Defendant did not settle the total loss claim with Plaintiff and other Class Members or issue the loss payout amount to Plaintiff and other Class Members – the insureds.

66.    Plaintiff and other Class Members paid money to Defendant for insurance premiums to secure coverage for their leased vehicles with the understanding that in the event of a total loss, Defendant would issue a total loss payout to Plaintiff and other Class Members in the amount determined by the Policy.

67.    Plaintiff and other Class Members have suffered losses and incurred expenses as a result of Defendant's failure to issue the equity portion of the loss payout to them as required by the Policy.

68.    Plaintiff and the other Class Members have complied with all applicable provisions of the Policy, including payment of premiums.

69.    Defendant, without justification, breached the Policy by, among other things, collecting insurance premiums from Plaintiff and other Class Members to insure their leased vehicles under the Policy and, after Defendant has declared those vehicles a total loss, failing to pay Plaintiff and other Class Members the equity surplus portion of the loss payout.

Blood Hurst & O'Reardon, LLP

70.    As a direct and proximate result of Defendant's breach of the Policy, as alleged herein, Plaintiff and other Class Members have suffered actual and substantial damages for which Defendant is liable.

## COUNT II

**Violation of the California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200,** *et seq.*

71.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

72.    Plaintiff brings this claim individually and on behalf of members of the Class in California.

73.    Plaintiff and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

74.    The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. Prof. Code § 17200.

75.    Unlawful Conduct: In the course of conducting business, as a result of engaging in the conduct alleged in this complaint, including failing to pay its insureds any portion of the loss payoff amounts at issue, Geico has violated Section 17200's prohibition against engaging in unlawful acts and practices by virtue of its conduct, which violates California Civil Code sections 1572, 1573, 1709, and 1711, and constitutes a breach of contract and breach of the implied covenant of good faith and fair dealing.

76.    Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

77.    Unfair Conduct: In the course of conducting business, Defendant violated the UCL's proscription against "unfair" business practices by, among other things, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts by promising that Geico will

BLOOD HURST & O' REARDON, LLP

16

00207370

issue a total loss payout to the named insured pursuant to the Policy and failing to do so.

78.    There is no societal benefit from Defendant's misrepresentations and omissions, which include promising to but failing to provide loss payouts in an amount of an insured vehicle's ACV in breach of the Policy. There is only harm from Defendant's conduct. Plaintiff and other Class Members were harmed by paying premiums and failing to receive the benefits promised under the Policy. As a result, Defendant's conduct is "unfair," as it offended an established public policy. Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers as the gravity of Defendant's conduct outweighs any alleged benefits attributable thereto.

79.    Further, as set forth in this Complaint, Plaintiff alleges violations of consumer protection and unfair competition in California, resulting in harm to consumers. Defendant's acts and omissions also violate and offend the public policy against engaging in unfair competition and deceptive conduct towards consumers. Defendant's conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq*.

80.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

81.    Fraudulent Conduct: In the course of conducting business, Defendant has violated the UCL's proscriptions against "fraudulent" business acts or practices by, among other things, making false and misleading representations and omissions of material fact about the benefits the Policy would confer on Plaintiff and other Class Members in the event their insured vehicles were declared a total loss. Defendant's actions, claims, omissions, and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq*.

BLOOD HURST & O' REARDON, LLP

00207370

BLOOD HURST & O' REARDON, LLP

82.    Geico's conduct caused and continues to cause substantial injury to Plaintiff and other Class Members. Plaintiff and other Class Members have suffered injury in fact and have lost money as a result of Geico's unlawful, unfair, and fraudulent conduct.

83.    As a result of its unlawful, unfair, and fraudulent business practices, Defendant received insurance premium payments from Plaintiff and other Class Members in return for providing Plaintiff and other Class Members with the Policy that does not confer the advertised and contracted-for benefits.

84.    Unless restrained and enjoined, Defendant will continue to engage in the unlawful, unfair, and fraudulent conduct described herein.

85.    Accordingly, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, seeks restitution from Defendant of all money obtained from Plaintiff and other Class Members collected as a result of Defendant's unfair competition, and for an order and injunction prohibiting Defendant from continuing and further engaging in its unlawful, unfair and fraudulent conduct, and awarding all other relief this Court deems appropriate.

## COUNT III

### Breach of the Implied Covenant of Good Faith and Fair Dealing

86.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

87.    Plaintiff brings this claim individually and on behalf of the Class.

88.    An implied duty of good faith and fair dealing is incorporated into every contract. Defendant entered into and is bound by the Policy with Plaintiff and other Class Members: valid enforceable contracts with an implied duty of good faith and fair dealing.

89.    Under the Policy, Defendant promised that in the event of a total loss incident involving the covered vehicle, it would pay Plaintiff and other Class Members the ACV of their insured vehicles minus any applicable deductible. *See* Exhibit A (Geico Policy) at pages 17–18.

00207370

BLOOD HURST & O' REARDON, LLP

90.     Plaintiff and other Class Members paid their insurance coverage premiums in exchange for the reasonable expectation that, in the event of a total loss, they would receive the benefits contracted for under the Policy – a total loss payout. Defendants knew under the Policy the named insureds were to be paid any loss payout. *See* Exhibit A at page 23 (section titled "LOSS PAYABLE CLAUSE"). The named insureds paid their insurance premiums in exchange for the insurance coverage of their leased vehicles and the right to receive the benefit of a total loss payout in an amount determined by the Policy.

91.     Defendant, as the insurer, was aware its insureds were lessees who owed third-party leasing companies an amount under the leasing companies' liens on the vehicle covered under the Policy. At all times, Defendant knew the amounts its named insureds – the lessees – owed their leasing companies.

92.     When Defendant declared the covered vehicle to be a total loss and determined what the ACV was to replace the leased vehicle, Defendant knew the contractual payout amounts pursuant to the Policy exceeded the amounts Plaintiff and other Class Members owed their leasing companies.

93.     In frustration of Plaintiff's and other Class Members' rights to a loss payout under the Policy, Defendant, knowing the ACV of its insureds' leased vehicles exceeded the amount its insureds owed to their leasing companies, knowingly and intentionally paid the entire loss payout and the equity surplus to the leasing companies.

94.     Defendant had a duty to act fairly and in good faith to discharge its contractual duties under the Policy, including distributing the total loss payout to its insureds, instead of to the third-party leasing companies.

95.     In breach of the implied covenant, Defendant unfairly and willingly distributed the entire payout amount to its insureds' leasing companies in violation of the reasonable expectation held by its insureds that any loss payout amount would be distributed to them. If the total loss payment is more than what the lessee owes to the

19

leasing company, the balance is the sole property of the lessee and should be paid to the lessee. It is unreasonable and unfair for Defendant to make third-party leasing companies the beneficiaries of money that goes beyond the leasing companies' interest in the insurance, which is the amount of money owed by Class Members to those companies under their respective lease agreements. Defendant, without reasonable contractual basis or expectation, believed it appropriate to provide third-party leasing companies such a financial windfall. This is especially true because the unintended financial gain for these companies frustrates the rights of Defendant's named insureds, the Class Members who are parties to the Policy. In exchange for substantial premium payments, Defendant contracted with Class Members to provide them with the ACV of their vehicles, which in the event of a total loss, represents a sum of money equivalent to the amount it would cost, at the time of loss, to purchase a comparable vehicle. *See* Exhibit A at page 32 (section titled "LIMIT OF LIABILITY"). By failing to provide Class Members with any of the total loss payout, Defendant injured the Class Members' rights to receive the benefits expressly contemplated by the Policy.

96.     For several reasons, the purposes of the Policy and providing the ACV for total loss in the case of collision and other accidents further supports the fact that Defendant should send the equity surplus payout amount to the named insureds who paid for the Policy rather than to the third-party companies that financed the vehicles:

(a)     Ownership rights: The insured party is the one who purchased the Policy and has been paying the premiums. They are defined as both the owners and named insureds in the Policy and hold the rights to the coverage benefits. Sending the equity surplus amount to the insured ensures that they receive the benefits and fair compensation they are entitled to according to the terms of their Policy.

(b)     Fulfillment of financial obligations: When a total loss occurs, the primary financial obligation of the insured party is to pay off the outstanding balance owed to the company that financed the vehicle. Once that obligation is met, the

insured party should be entitled to any surplus from the insurance payout, as it represents the remaining value of their asset.

(c)     Incentive for responsible insurance purchase: By sending the surplus amount to the insured, insurance companies encourage policyholders to purchase adequate coverage for their vehicles. If the surplus were sent to the financing company instead, policyholders may not see the full benefit of their insurance coverage and may be less inclined to maintain appropriate coverage levels.

(d)     Fair market value compensation: The purpose of insurance is to put the insured party in a similar financial position to what they were in before the loss occurred. By providing the insured with the surplus amount, they can replace their totaled vehicle with one of similar value, thus restoring the named insureds to their pre-loss financial situation.

97.     Insurance contracts are meant to protect insureds' reasonable expectation of the benefits of insurance coverage where the insurer-drafter controls the language of the policy. It is unfair and inequitable under the circumstances for the leasing company to receive the equity surplus amount from Defendant where the contractual responsibilities under the Policy are meant to protect Plaintiff's and other Class Members' – the named insureds – expectation of coverage and recovery after a total loss event occurs. The leasing company's primary concern is recovering the outstanding balance on the lease. Any equity surplus amount should belong to the insured party who has borne the costs of the insurance premiums and should receive the benefits of the coverage. Further, the insured party has been paying insurance premiums to secure coverage for their vehicle. If the leasing company receives the equity surplus amount, the insured party would bear the financial burden of the insurance premiums without receiving the full benefits of their coverage.

98.     By paying the equity surplus to the leasing companies, Defendant unjustly enriched the leasing companies at the expense of the Plaintiff and other Class Members. Defendant has frustrated the Class Members' rights to the benefits – a total

loss payout – of the Policy by consciously and unfairly discharging its contractual responsibility to distribute the total loss payout to its named insureds – Plaintiff and other Class Members.

99.    Defendant's decision to pay the entire loss payout to the leasing companies instead of Plaintiff and other Class Members does not have a reasonable contractual basis or justification. The insured parties entered into contracts with Defendant to receive the ACV in the event of a total loss, and Defendant's failure to pay the equity surplus to the insured parties amounts to a breach of the implied covenant of good faith and fair dealing.

### COUNT IV

### For Declaratory Relief

100.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

101.    Plaintiff brings this claim individually and on behalf of the Class.

102.    Plaintiff's and Class Members' insurance coverage for their leased vehicles, including their ability to recover the promised loss payout amounts was the express purpose of the Policy.

103.    Plaintiff's and Class Members' benefit of receiving insurance coverage for their vehicles was the mutual purpose in the Policy, as Plaintiff and other Class Members on the one hand and Defendant on the other understood at the time of contracting, and but for their right to receive coverage and ability to recover the promised loss payout amounts, Plaintiff and other Class Members would not have purchased the Policy. When Plaintiff's and other Class Members' vehicles were declared a total loss and Defendant failed to pay them all or a portion of the loss payout amount, Defendant breached the Policy due to no fault of Plaintiff and other Class Members, and Plaintiff and other Class Members were deprived of the consideration they were to receive in exchange for paying Geico for the coverage and represented benefits of the Policy.

104.    Declaratory relief is proper regarding the subject matter of this action

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00207370

because an actual controversy has arisen and now exists regarding Plaintiff's rights, and Defendant's obligations, relating to the Plaintiff's and other Class Members' rights to be paid all or a portion of the loss payout amounts under the standardized insurance Policy contracts at issue. This Court has the power to declare the obligations and duties of the parties and to give such other relief as may be necessary.

105.   By virtue of the foregoing, there exists an actual, justiciable controversy between the parties. Plaintiff contends that Defendant's issuing of the full loss payout to his vehicle leasing company instead of him – the named insured – pursuant to the Policy is unlawful. Defendant charged and collected and continues to charge and collect insurance premiums under the Policy despite failing to issue loss payments to the proper parties after declaring Plaintiff's and other Class Members' vehicles a total loss. Defendant received these insurance premium payments from Plaintiff and other Class Members in exchange for the promise of issuing a loss payout in the event their vehicles were declared a total loss, but Defendant failed to uphold that contracted-for promise by failing to pay Plaintiff and Class Members. Defendant has not refunded the money it received in the form of premium payments or issued any portion of the loss payouts to Plaintiff and Class Members as required under the Policy.

106.   Accordingly, Plaintiff requests a judicial determination of his rights and duties, and the rights and duties of absent Class Members, and a declaration as to whether Geico's insurance benefit payout practice is illegal or a breach of contract. A declaration from the Court ordering Geico to stop its ongoing, illegal practices is required.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the proposed Class, respectfully request that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00207370

A.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B.     Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and other Class Members as a result of Defendant's unlawful, unfair and fraudulent business practices;

C.     Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

D.     Ordering damages for Plaintiff and the Class;

E.     Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and other Class Members;

F.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

G.     Ordering such other and further relief as may be just and proper.

Respectfully submitted,

Dated: December 18, 2023

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)

By:       *s/  Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

LATHROP LAW, APC
JORGE FEDERICO LATHROP (330976)
205 West Alvarado Street
Fallbrook, CA  92028
Tel: 760/723-9612
760/723-9681 (fax)
federico@lathroplawfirm.com

*Attorneys for Plaintiff*

BLOOD HURST & O' REARDON, LLP

00207370

24

CLASS ACTION COMPLAINT